# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **YEHONATAN KAPACH,**<br>*Plaintiff,*<br><br>v.<br><br>**CABARRUS COUNTY, NORTH CAROLINA;**<br>ASHLIE P. SHANLEY, District Attorney,<br>in her individual capacity only;<br>JOHN DOE ASSISTANT DISTRICT ATTORNEY,<br>in his individual capacity;<br>JOHN/JANE DOE CLERKS;<br>JOHN/JANE DOE COURT OFFICIALS,<br><br>*Defendants.* | Civil Action No. 26CV649<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**<br><br>**42 U.S.C. § 1983**<br>**TITLE VI, 42 U.S.C. § 2000d**<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This civil-rights action arises from a state traffic proceeding in Cabarrus County, North Carolina, in which Plaintiff — a Hebrew-speaking, pro se defendant — was denied meaningful access to a judge, denied rulings on pending motions for more than ninety days, denied meaningful discovery responses, denied requested Hebrew language access, and subjected to an administrative continuation of his criminal/traffic proceeding without any written judicial order.

2. This case is not about the merits of the underlying traffic infraction.

3. This case is about whether state and county officials may keep a pro se defendant inside a criminal/traffic proceeding for months while refusing to rule on properly filed motions, refusing to respond to discovery requests, denying language access, restricting the electronic tools necessary to defend himself, and resetting the case administratively without a written judicial order.

4. Plaintiff does not seek to enjoin, stay, dismiss, or otherwise interfere with the merits of the pending state traffic charge in State of North Carolina v. Kapach, Case No. 25IF000150-120, Cabarrus County District Court.

5. Plaintiff does not ask this Court to adjudicate guilt or innocence on the underlying citation.

6. Plaintiff seeks only prospective, declaratory, collateral, and damages relief addressing: the denial of access to the courts; the failure to rule on properly filed motions; the failure to provide meaningful discovery responses; the failure to provide constitutionally adequate language access; the unequal burden imposed on pro se litigants; and the administrative continuation of a criminal/traffic proceeding without meaningful judicial review.

7. The relief sought is collateral to, and independent of, the merits of the underlying state proceeding. Plaintiff does not seek federal review of any state-court judgment, does not seek dismissal of the pending citation, and does not seek an order directing any state judge how to rule.

8. Plaintiff challenges only collateral administrative, access-related, and non-judicial practices and customs that deprived him of meaningful access to court procedures, as distinguished from the state court's core adjudicative functions, which are not at issue in this action.

## II. JURISDICTION AND VENUE

9. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

10. This action is brought under 42 U.S.C. § 1983 for violations of rights secured by the First and Fourteenth Amendments to the United States Constitution.

11. This action also arises under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and its implementing regulations.

12. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

13. Venue is proper in the Middle District of North Carolina under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Cabarrus County, North Carolina, which lies within this District.

## III. PARTIES

14. Plaintiff Yehonatan Kapach is a resident of Charlotte, North Carolina, and appears pro se. Plaintiff's native language is Hebrew.

15. Defendant Cabarrus County, North Carolina, is a unit of local government and a legal entity capable of being sued. Cabarrus County, through its courthouse facilities, personnel, policies, customs, and/or jointly administered practices with state court actors operating in Cabarrus County, participated in or contributed to the access-to-court, language-access, and equal-protection failures alleged herein. Plaintiff's Monell claims against Cabarrus County are limited to administrative and non-judicial functions; Plaintiff does not contend that Cabarrus County exercises control over judicial decision-making.

16. Defendant Ashlie P. Shanley is the elected District Attorney of Prosecutorial District 25, which encompasses Cabarrus County, North Carolina. She is sued in her individual capacity only, and only to the extent she participated in or knowingly permitted supervisory or administrative conduct outside the core prosecutorial advocacy functions protected by absolute prosecutorial immunity. See Imbler v. Pachtman, 424 U.S. 409 (1976).

17. Defendant John Doe Assistant District Attorney is the prosecutor who, on or about February 6, 2026, while sitting at the prosecution table in the courtroom of the Cabarrus County District Court, engaged in the administrative conduct described in this Complaint — including unilaterally assigning Plaintiff a new hearing date without any judicial order and refusing to identify himself to Plaintiff when asked. He is sued in his individual capacity for administrative conduct that is outside the scope of absolute prosecutorial immunity. See Burns v. Reed, 500 U.S. 478 (1991). Plaintiff will seek leave to amend upon learning his identity through discovery.

18. Defendant John/Jane Doe Clerks are court employees or court-related officials whose identities are not yet known and who participated in refusing or failing to provide Plaintiff with procedural access, filing assistance, routing of motions, docket action, or other meaningful access to court procedures.

19. Defendant John/Jane Doe Court Officials are additional county or court-related personnel whose identities are not yet known and who participated in administrative, ministerial, or procedural-access failures described herein, including failures relating to courthouse access procedures, language-access procedures, filing-access procedures, or non-judicial practices

affecting pro se litigants. Plaintiff does not allege that Doe Court Officials are liable for judicial rulings or for acts intimately connected with judicial decision-making.

20. Plaintiff will seek leave to amend this Complaint once the identities of the Doe Defendants are ascertained through discovery.

21. At all relevant times, each Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983, through their official positions, courthouse authority, prosecutorial or court-related roles, county-administered facilities, policies, customs, practices, or jointly administered state-local procedures.

## IV. FACTUAL ALLEGATIONS

### A. The Underlying State Proceeding

22. Plaintiff is the defendant in State of North Carolina v. Yehonatan Kapach, Case No. 25IF000150-120, in Cabarrus County District Court. The citation alleges failure to stop at a stop sign.

23. On or about May 4, 2025, Plaintiff submitted a formal demand for discovery and documents in the state traffic proceeding. Plaintiff requested the prosecution materials necessary to understand the evidence against him and to prepare his defense.

24. Plaintiff's discovery requests were not meaningfully answered. Plaintiff did not receive the requested prosecution materials.

25. On or about May 16, 2025, Plaintiff filed a Motion to Continue because discovery had not been provided and because of a family-related scheduling conflict.

### B. Electronic-Device Restrictions and Their Disproportionate Burden on Plaintiff

26. As a pro se litigant, Plaintiff relies on electronic devices — including his phone and computer — for legal research, access to filings, evidence review, translation assistance, communications, calendar access, note-taking, document preparation, preservation of records, and management of legal obligations.

27. At all relevant times, the Cabarrus County Courthouse enforced electronic-device restrictions against members of the public and unrepresented litigants, including Plaintiff.

28. Plaintiff was required to surrender, refrain from using, or otherwise lose meaningful access to his electronic devices while inside the courthouse.

29. These restrictions substantially impaired Plaintiff's ability to participate meaningfully in his own defense, to access the court on equal footing, and to document the events occurring inside the courthouse. For Plaintiff — a Hebrew-speaking pro se litigant — the harm was compounded because he relied on electronic tools to translate, access filings, review evidence, communicate, preserve records, and identify officials.

30. Upon information and belief, prosecutors, attorneys, law-enforcement officers, and court personnel retained access to phones, computers, digital systems, internal communications, and electronic records while Plaintiff did not.

31. During multiple appearances at the Cabarrus County Courthouse, Plaintiff observed prosecutors, attorneys, law-enforcement officers, and court personnel using phones, computers, electronic systems, upgraded workstations, and materially superior seating and working conditions.

32. By contrast, Plaintiff and other members of the public, including unrepresented litigants, were required to proceed under materially inferior conditions — restricted access to phones, computers, electronic records, legal materials, translation assistance, and basic working tools necessary to defend oneself.

33. The electronic-device restrictions imposed a disproportionate burden on Plaintiff as an unrepresented litigant and operated as an accountability barrier: the policy deprived Plaintiff and other members of the public of the ability to create contemporaneous records of courthouse conduct while public officials and institutional actors retained access to internal systems, records, communications, and official authority.

### C. The February 6, 2026 Court Appearance

34. On February 6, 2026, Plaintiff appeared in Cabarrus County District Court as required. Plaintiff was not represented by counsel.

35. The State's essential witness, Deputy V.C. McGee, did not appear.

36. Plaintiff requested to proceed before a judge.

37. Plaintiff requested dismissal of the case, or alternatively requested that his Motion to Dismiss be heard, because the State's witness was absent.

38. Plaintiff was not brought before a judge. Plaintiff was not given a judicial hearing. Plaintiff was not given a judicial ruling.

39. Plaintiff was informed, as he understood it, that there was no judge available to hear his matter.

### D. The Unilateral Administrative Continuance by Defendant John Doe ADA

40. Defendant John Doe Assistant District Attorney, sitting at the prosecution table in the courtroom, addressed Plaintiff regarding the disposition of his case.

41. Defendant Doe unilaterally assigned Plaintiff a new hearing date without any judicial order, without a hearing, and without Plaintiff's consent. This act of scheduling a continuance constitutes administrative conduct outside the protected sphere of core prosecutorial advocacy. See Kalina v. Fletcher, 522 U.S. 118, 125–26 (1997) (absolute immunity does not extend to administrative or investigative functions that any official might perform).

42. Plaintiff requested that Defendant Doe identify himself by name.

43. Defendant Doe refused to identify himself.

44. Because the courthouse policy prohibited Plaintiff from accessing electronic devices, Plaintiff had no reliable means to record, document, or preserve the identity of Defendant Doe or the substance of the exchange. This inability to document was not incidental; it was the foreseeable result of applying a no-electronic-device rule to members of the public while courthouse officials and institutional actors retained access to official systems, records, communications, and authority.

### E. Plaintiff's Interaction with Defendant Shanley

45. Defendant Ashlie P. Shanley was personally present in the same courtroom during the events described above.

46. After Defendant Doe refused to identify himself, Plaintiff approached Defendant Shanley and requested her identification.

47. Defendant Shanley identified herself as the District Attorney and stated, in substance, that all prosecutors present in the courtroom worked under her supervision.

48. By her own statement, Defendant Shanley acknowledged direct supervisory authority over Defendant Doe and over the other prosecutors present in the courtroom during the events described in this Complaint.

49. Despite her supervisory authority and contemporaneous presence, Defendant Shanley did not identify Defendant Doe to Plaintiff, did not correct Defendant Doe's refusal to identify himself, and did not intervene in the unilateral administrative continuation of Plaintiff's case without judicial authority. Plaintiff's claims against Defendant Shanley are limited to this supervisory and administrative conduct and do not challenge any act within the protected sphere of prosecutorial advocacy. Absolute immunity does not extend to the failure to supervise or to the failure to correct administrative misconduct occurring outside the courtroom advocacy function. See Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Burns v. Reed, 500 U.S. 478, 492–96 (1991).

### F. Denial of Filing Access and Language Access

50. Plaintiff requested forms or a means to file motions while at the courthouse on February 6, 2026.

51. Plaintiff was informed that forms were unavailable. Plaintiff was directed to an online portal or electronic system that did not function for Plaintiff's purposes.

52. Because Plaintiff lacked meaningful access to his electronic devices and because the system provided was not functioning, Plaintiff was effectively unable to prepare and submit filings from within the courthouse, and was forced to leave and prepare filings from home.

53. Plaintiff requested Hebrew language access and/or a Hebrew interpreter on multiple occasions, both orally and in writing.

54. Hebrew is Plaintiff's native language.

55. No Hebrew interpreter was provided.

56. The North Carolina Judicial Branch, through its Office of Language Access Services, publicly represents on its official website that the courts provide interpreters at no cost for civil and criminal court appearances before a judge, magistrate, or clerk of court — including traffic

proceedings. The Office further represents that it will find an interpreter for any language necessary so that a party in interest can fully and fairly participate in court.

57. Despite these public representations, and despite Plaintiff's repeated written and oral requests for a Hebrew interpreter beginning on or about February 6, 2026 and renewed in subsequent filings, Defendants failed and refused to provide a Hebrew interpreter or any meaningful Hebrew language access.

58. Upon information and belief, based on Plaintiff's personal observations during multiple appearances at the Cabarrus County Courthouse, a substantial number of litigants and members of the public appearing at that courthouse are non-native English speakers or persons with limited English proficiency.

59. Plaintiff is informed and believes that interpreter services are more readily available for certain commonly requested languages, including Spanish, while his requests for Hebrew language access received no meaningful response. Plaintiff reserves the right to develop this contention through discovery.

60. Plaintiff does not allege at this stage that he possesses direct evidence of anti-Jewish statements or intent by Defendants.

61. Plaintiff does not yet know whether the denial of Hebrew language access resulted from discriminatory treatment against Hebrew-speaking, Israeli-born, or Jewish litigants; from a broader failure to provide meaningful access for less-commonly-requested languages; or from a de facto system in which meaningful interpreter access is provided primarily for Spanish-speaking litigants. Each possibility is inconsistent with North Carolina's public commitment to provide interpreters in any language and warrants discovery.

62. Plaintiff does not rely solely on disparate impact. Defendants had actual, repeated notice of Plaintiff's specific requests for Hebrew language access, yet provided no interpreter and no written response. This pattern of repeated requests, actual notice, and non-response supports an inference of intentional unequal treatment based on national origin requiring discovery, in addition to any disparate impact claim.

63. Plaintiff seeks discovery regarding interpreter policies, interpreter requests by language, approvals and denials of interpreter requests, training materials, internal communications, and

records concerning the treatment of Hebrew-speaking, Jewish, Israeli-born, and other limited-English-proficient litigants in Cabarrus County courts.

64. The case was administratively reset or continued without a written judicial order, without a hearing, and without Plaintiff's consent.

## G. Plaintiff's Repeated Attempts to Obtain Rulings

65. On or about February 9, 2026, Plaintiff hand-delivered to the Cabarrus County courthouse clerk's counter: a Notice of Motion to Dismiss with Memorandum of Law; an Affidavit of Yehonatan Kapach; and a Proposed Order. Plaintiff's Motion to Dismiss was based on failure to prosecute, denial of access to court, lack of meaningful judicial review, lack of discovery, and due-process violations.

66. Plaintiff received no written ruling, no hearing date on the Motion to Dismiss, and no meaningful judicial action.

67. On or about March 2, 2026, Plaintiff hand-delivered and/or submitted at the courthouse clerk's counter a Request for Ruling with Written Reasons; renewed his request for Hebrew language access; and objected to any administrative continuation without a judicial order. Plaintiff again received no written ruling, no hearing, and no meaningful response.

68. On or about April 2, 2026, Plaintiff hand-delivered and/or submitted a Final Demand for Written Ruling. No written ruling was issued. No hearing was scheduled. No meaningful action was taken.

69. As of the date of filing of this Complaint, more than ninety days have elapsed since Plaintiff filed his Motion to Dismiss on or about February 9, 2026. The NC Courts Portal docket, retrieved on May 26, 2026, reflects Plaintiff's case-event submissions and subsequent resets to April 1, 2026 and July 22, 2026, but does not display scanned copies of Plaintiff's filings or any written judicial ruling on them.

70. Plaintiff's discovery requests remain unanswered or materially unfulfilled. Plaintiff's request for language access remains unresolved.

## H. No Adequate State Remedy

71. Plaintiff has attempted to obtain relief within the state proceeding through every channel available to him, including discovery requests, a Motion to Dismiss, an affidavit, a proposed

order, a Request for Ruling with Written Reasons, a renewed request for Hebrew language access, and a Final Demand for Written Ruling.

72. Despite these efforts, Plaintiff received no meaningful discovery response, no written ruling, no hearing, no interpreter, and no meaningful judicial action for more than ninety days. Because the same state process Plaintiff is required to use has refused to act on his filings, Plaintiff has no adequate practical remedy within the ongoing state proceeding for the access-to-court and due-process violations alleged herein.

## I. Prior Resort to State Oversight Mechanisms

73. Plaintiff also attempted to obtain relief through state oversight mechanisms outside the ordinary traffic proceeding.

74. Plaintiff submitted a complaint and/or supplemental complaint to the North Carolina Judicial Standards Commission concerning the denial of access to a judge, the failure to rule on pending motions, the administrative continuation of the case without a written judicial order, the failure to provide language access, and the failure to provide meaningful procedural access.

75. Despite these efforts, Plaintiff received no practical remedy that cured the ongoing denial of access, failure to rule, failure to provide discovery, failure to provide Hebrew language access, or administrative handling of the case without meaningful judicial review. In addition, on or about May 27, 2026, Plaintiff submitted a report to the United States Department of Justice Civil Rights Division concerning the alleged denial of language access, denial of meaningful court access, and related procedural issues described in this Complaint. A confirmation and tracking number was issued by the Civil Rights Division. Plaintiff does not represent that the Civil Rights Division has opened an investigation or validated any of the claims herein. See Exhibit P.

## J. Policies, Customs, and Practices — Monell Liability

76. The constitutional violations described in this Complaint did not arise from isolated decisions by individual employees. They arose from official policies, established customs, widespread practices, and failures of training and supervision attributable to Defendant Cabarrus County, through its courthouse facilities, personnel, county-administered practices, and/or jointly

administered state-local procedures. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

77. These policies, customs, and failures of training and supervision include:

(a) an established practice of administratively continuing traffic and criminal cases without judicial review, written order, or defendant consent, when prosecution witnesses fail to appear or prosecution materials are not ready;

(b) a custom of permitting motions filed by pro se litigants to remain unaddressed for periods exceeding ninety days, without ruling, hearing, or written explanation;

(c) a practice of treating discovery requests from pro se defendants as ministerial rather than substantive, resulting in no meaningful response;

(d) enforcement of electronic-device restrictions in a manner that disproportionately burdens unrepresented litigants while imposing no comparable burden on institutional actors such as prosecutors, attorneys, and law enforcement;

(e) a failure to maintain functioning procedures by which pro se litigants can prepare and file documents from within the courthouse;

(f) a failure to provide language access in non-English languages, including Hebrew, despite specific, repeated requests and despite the State's own public commitment to provide interpreters in any language at no cost;

(g) a failure to train clerks, court personnel, and prosecutorial staff regarding the procedural rights of pro se defendants under federal and state law; and

(h) a failure to supervise such personnel to ensure that pro se filings receive timely judicial attention.

78. Upon information and belief, based on Plaintiff's observations during multiple appearances at the Cabarrus County Courthouse and publicly available docket information, the conduct described in this Complaint reflects a pattern or practice affecting other pro se litigants in Cabarrus County and is not limited to Plaintiff's case. Plaintiff will seek discovery to further substantiate this allegation.

79. To the extent these policies, customs, practices, and failures of training and supervision are attributable to Cabarrus County through its courthouse facilities, personnel, or jointly

administered state-local procedures, they were the moving force behind, and the direct and proximate cause of, the constitutional violations suffered by Plaintiff. Monell, 436 U.S. at 694. Plaintiff's Monell claims are limited to county-administered or jointly administered administrative and non-judicial functions; Plaintiff does not contend that Cabarrus County exercises direct control over judicial decision-making.

80. Defendant Shanley, as elected District Attorney of Prosecutorial District 25, exercised supervisory authority over the prosecutors present during the events described herein, including Defendant John Doe ADA. Her contemporaneous presence in the courtroom and supervisory acknowledgment, combined with her failure to intervene or correct, are relevant to supervisory liability under § 1983.

81. As a direct and proximate result of Defendants' conduct, Plaintiff suffered: loss of time; loss of income as a self-employed individual whose business depends on telephone communication while he was required to remain inside the courthouse without his phone; travel costs; emotional distress; impairment of his defense; and deprivation of constitutional rights.

82. These access barriers caused actual injury by impairing Plaintiff's ability to obtain rulings, prepare and present motions, review and obtain discovery, preserve the identity of officials involved, understand proceedings in his native language, and meaningfully defend himself in the pending proceeding. See Lewis v. Casey, 518 U.S. 343 (1996) (requiring actual injury to access-to-courts claim).

## V. CLAIM ONE

### Denial of Access to the Courts

### 42 U.S.C. § 1983 — First Amendment (Petition Clause) and Fourteenth Amendment (Due Process)

83. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

84. The right of meaningful access to the courts is protected by the Petition Clause of the First Amendment and by the Due Process Clause of the Fourteenth Amendment. See Bounds v. Smith, 430 U.S. 817 (1977); Christopher v. Harbury, 536 U.S. 403 (2002). The right encompasses not only physical entry to a courthouse but a meaningful opportunity to present

claims and defenses, to file motions, to receive rulings, to access discovery, and to participate in proceedings on substantially equal terms.

85. Defendants denied Plaintiff meaningful access to the courts by:

    (a) failing to provide access to a judge when Plaintiff appeared and requested to be heard;

    (b) failing to provide meaningful filing access or functioning filing procedures;

    (c) enforcing electronic-device restrictions in a manner that substantially burdened Plaintiff's ability to research, communicate, prepare filings, preserve records, review evidence, translate materials, and defend himself as a pro se litigant, while institutional actors retained full electronic access;

    (d) failing to provide timely rulings on pending motions, including the Motion to Dismiss filed on or about February 9, 2026;

    (e) failing to provide meaningful responses to properly served discovery requests; and

    (f) failing to provide requested Hebrew language access despite Plaintiff's repeated oral and written requests.

86. Plaintiff suffered actual injury, including impairment of his defense, inability to obtain rulings and discovery, and inability to participate meaningfully in the proceeding. Lewis v. Casey, 518 U.S. 343 (1996).

87. As a direct and proximate result of Defendants' conduct, Plaintiff suffered denial of meaningful court access, impairment of his defense, emotional distress, wasted time, loss of income, travel costs, and deprivation of constitutional rights.

## VI. CLAIM TWO

### Procedural Due Process

### 42 U.S.C. § 1983 — Fourteenth Amendment

88. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

89. The Fourteenth Amendment prohibits deprivation of liberty or property without due process of law. Plaintiff, as a defendant in an ongoing criminal/traffic proceeding, possesses a liberty interest in the fair conduct of that proceeding, including the right to notice, a meaningful opportunity to be heard, meaningful access to evidence, and rulings on properly filed motions.

90. Plaintiff appeared in court, requested to be heard, requested discovery, requested language access, filed motions, and requested written rulings.

91. Defendants failed to provide a meaningful opportunity to be heard, failed to provide rulings on pending motions for more than ninety days, failed to respond meaningfully to discovery, failed to provide meaningful language access, and permitted administrative continuation of the case without any written judicial order.

92. Defendant John Doe ADA engaged in administrative conduct outside the scope of absolute prosecutorial immunity by unilaterally assigning a new hearing date without judicial authority and refusing to identify himself to a pro se litigant.

93. Defendant Shanley, with direct supervisory authority and contemporaneous presence in the courtroom, failed to intervene, correct, or prevent the procedural violations of her subordinate.

94. This conduct violated Plaintiff's procedural due-process rights secured by the Fourteenth Amendment.

## VII. CLAIM THREE

### Equal Protection

### 42 U.S.C. § 1983 — Fourteenth Amendment

95. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

96. Plaintiff brings this claim under the Equal Protection Clause of the Fourteenth Amendment, including the class-of-one doctrine, which protects individuals against intentional, irrational differential treatment. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

97. The courthouse policies and practices created irrational and unequal practical access burdens on unrepresented litigants, including Plaintiff, while institutional actors such as prosecutors, attorneys, and law enforcement retained the tools and resources necessary to function. Plaintiff does not allege that these groups are identical comparators in all respects; rather, Plaintiff alleges that the differential treatment imposed on pro se litigants — including denial of electronic access, language access, filing access, and timely rulings — lacked any rational

basis and placed an unconstitutional practical burden on Plaintiff's ability to participate meaningfully in the proceeding.

98. Plaintiff, as a pro se litigant, was denied reasonable accommodation or any equivalent alternative access to the tools necessary to defend himself, while no comparable burden was imposed on institutional actors operating in the same courthouse.

99. There is no rational basis for the administrative classification that denied Plaintiff, as a pro se litigant, meaningful procedural access, functioning filing systems, timely rulings, discovery responses, language access, and access to basic tools necessary to participate meaningfully in his own defense, while institutional actors retained those tools and resources without restriction.

100. Plaintiff further alleges that the denial of Hebrew language access, when combined with the refusal to provide rulings, discovery, electronic access, and meaningful procedural assistance, supports an inference of unequal and potentially discriminatory treatment requiring discovery. Plaintiff makes this allegation without asserting, as established fact at this stage, that any Defendant acted with anti-Jewish animus.

101. The unequal treatment was intentional and/or based on an irrational administrative classification: Defendants knew Plaintiff was pro se, knew he requested access, rulings, discovery, and Hebrew language assistance, yet knowingly failed to provide meaningful access or response.

102. Defendants' conduct violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.

## VIII. CLAIM FOUR

### Denial of Language Access

### Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d

### And Fourteenth Amendment Due Process

103. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

104. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits recipients of federal financial assistance from discriminating on the basis of national origin. See Lau v. Nichols, 414 U.S. 563 (1974).

105. The Title VI claim in this Count is brought against Defendant Cabarrus County only. Title VI does not provide for individual liability. Alexander v. Sandoval, 532 U.S. 275 (2001). Plaintiff's language-access claims against individual Defendants proceed under the Due Process Clause of the Fourteenth Amendment.

106. Upon information and belief, Cabarrus County and/or related public entities receive federal financial assistance from the federal government, including but not limited to Department of Justice and other agency grant funding, and are therefore subject to Title VI and its implementing regulations. See Exhibit N (USAspending.gov federal funding records for Cabarrus County-related public entities). Plaintiff does not represent at this stage that Cabarrus County itself is a direct Title VI recipient; the allegation is made upon information and belief, and Plaintiff will seek leave to amend based on discovery to identify the proper recipient and responsible officials.

107. Plaintiff further invokes the Due Process Clause of the Fourteenth Amendment, which protects the right of a non-English-speaking litigant to meaningful participation in judicial proceedings affecting liberty interests.

108. Plaintiff additionally invokes N.C. Gen. Stat. § 8B-1 et seq., which establishes interpreter rights in North Carolina court proceedings.

109. Plaintiff's native language is Hebrew. Plaintiff requested Hebrew language access and/or a Hebrew interpreter on multiple occasions, orally and in writing. No Hebrew interpreter was provided.

110. The State of North Carolina has publicly committed, through its Office of Language Access Services, to provide interpreters in any language necessary, at no cost to the litigant, in traffic and other proceedings.

111. Defendants' failure to provide Hebrew language access to Plaintiff is inconsistent with the State's own published commitments and with the requirements of federal law.

112. Without meaningful language access, Plaintiff could not fully understand, participate in, or defend himself in the proceeding. This failure contributed directly to the denial of meaningful access to court and deprivation of due process.

## IX. CLAIM FIVE

### Declaratory and Injunctive Relief

113. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

114. Plaintiff seeks a declaration that Defendants violated his constitutional and statutory rights as described in this Complaint.

115. Plaintiff seeks prospective relief directed only at Defendants' administrative, non-judicial, and collateral practices, including: constitutionally adequate procedures for pro se access; language-access request handling; filing access; discovery-response procedures; and non-discriminatory courthouse policies.

116. Plaintiff does not seek, and this Court need not provide, any relief that would: (a) dismiss the state traffic charge; (b) stay or enjoin the state traffic proceeding; (c) adjudicate guilt or innocence on the underlying citation; (d) direct the state court how to rule on any pending motion; or (e) otherwise interfere with the merits of the pending state traffic proceeding. The relief sought is strictly collateral, prospective, administrative, and non-judicial in nature.

## X. DAMAGES

117. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages including:

   (a)  lost income, because Plaintiff is self-employed and depends on timely telephone communication with customers; while required to remain inside the courthouse without his phone, Plaintiff was unable to answer business calls, respond to customers, and coordinate work;

   (b)  travel costs to and from multiple courthouse appearances;

   (c)  wasted time at multiple courthouse appearances that produced no judicial action;

   (d)  impairment of his defense in the ongoing state proceeding;

(e) emotional distress, loss of peace of mind, and trauma caused or aggravated by Defendants' conduct; and

(f) deprivation of constitutional rights protected by the First and Fourteenth Amendments and by federal statute.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Declare that Defendants violated Plaintiff's constitutional and statutory rights as described in this Complaint;

(B) Declare that administrative and non-judicial practices that leave a pro se defendant without meaningful access to filing procedures, discovery-response procedures, language-access procedures, or court-access procedures for months violate constitutional protections, without directing the state court how to rule in the underlying traffic proceeding;

(C) Declare that courthouse electronic-device restrictions, when applied to prevent members of the public from contemporaneously documenting public officials' conduct inside a public courthouse, and when applied to deprive pro se litigants of tools necessary to translate, communicate, access filings, preserve records, identify officials, and meaningfully defend themselves while institutional actors retain full electronic access, violate constitutional principles of access to courts, due process, equal protection, and public accountability;

(D) Order appropriate prospective relief directed at Defendants' administrative and non-judicial practices, including constitutionally adequate procedures for pro se litigant access, language-access request handling, filing access, and non-discriminatory courthouse policies, without directing the state court how to rule on any pending matter;

(E) Permit discovery and, where appropriate, order production of records concerning interpreter requests, approvals and denials by language — including Hebrew, Spanish, and other non-English languages;

(F) Permit discovery and, where appropriate, order production of policies, training materials, and communications concerning language access, pro se litigants, courthouse

electronic-device restrictions, access to filing systems, and administrative continuances of traffic or criminal proceedings;

(G)  Award compensatory damages;

(H)  Award punitive damages against individual Defendants where permitted by law;

(I)  Award costs and all other relief available by law; and

(J)  Grant such other and further relief as this Court deems just and proper.

## XII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## XIII. VERIFICATION

I, Yehonatan Kapach, declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing factual allegations are true and correct to the best of my knowledge, information, and belief.

Executed on ~~7/8/2026~~ 7/8/2026, 2026, at Charlotte, North Carolina.

**YEHONATAN KAPACH**
*Plaintiff, Pro Se*
13929 Daltrey Lane
Charlotte, North Carolina 28277
Telephone: (980) 422-2322
Email: info@edna.news